# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KIRK DOUGLAS MILLER,** | ) | |
| **Petitioner,** | ) | **Civil Action No. 10-293 Erie** |
| | ) | |
| **v.** | ) | **District Judge Sean J. McLaughlin** |
| | ) | **Magistrate Judge Susan Paradise Baxter** |
| **MARIROSA LAMAS, et al.,** | ) | |
| **Respondents.** | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.      RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

## II.      REPORT[1]

### A.      Relevant Background

On April 14, 2008, Jean Miller was driving her car on State Route 5 in Erie County. She began to experience mechanical problems and pulled to the side of the road. A few moments later, a pickup truck careened into the rear end of her car. The driver of the truck got out of it and fled the scene on foot. (Trial Tr. at 66-76).

Ms. Miller was unharmed by the collision, but her car sustained several thousand dollars in damages. Shelly Balkovic had been traveling behind Ms. Miller and stopped to assist her. Ms. Balkovic saw the driver of the truck check it for damages and then run from the scene. (Id.)

---

[1]      Respondents have submitted the Common Pleas Court's file and the transcripts of Petitioner's trial, sentencing, and bench warrant review hearing. The documents in the Common Pleas Court's file are indexed and numbered 1 through 60. They shall be cited to as "CP Dkt. No. __ ."

Trooper Brown responded to the accident. He checked the unoccupied truck. It "reeked of an alcoholic beverage" and there were open beer cans inside. (Id. at 81). The truck was registered to Petitioner, whose driver's license had been suspended due to a D.U.I. conviction. (Id. at 89-90).

When they spoke at the scene, Ms. Balkovic told Trooper Brown that she could identify the driver of the truck. (Id. at 84). A day or so after the accident, Trooper Brown obtained Petitioner's most recent driver's license photo and showed it to her. She identified Petitioner as being the driver of the truck that hit Ms. Miller's car. (Id. at 84-86. See also id. at 76-78).

Within a few days, Trooper Brown was able to get in touch with Petitioner, who then met him at the State Police barracks. Petitioner told Trooper Brown "that his brake lines went out." (Id. at 87). Although Petitioner would testify at his trial that someone else had been driving his truck and that he was not involved in the accident in any way, at the time of this initial interview with Trooper Brown, Petitioner made no such statements. (Id. at 87-89, 95).

On April 25, 2008, a criminal complaint was issued charging Petitioner with three counts under the Motor Vehicle Code: (1) Accident Involving Damages to an Attended Vehicle, a misdemeanor in the third degree; (2) Driving with Suspended or Revoked Licenses, a summary offense; and, (3) Disregarding Traffic Line, a summary offense. (CP Dkt. No. 1).

On May 7, 2008, Petitioner was notified of the charges by written summons sent via certified mail, which directed him to appear before the magisterial district judge for a preliminary hearing on June 12, 2008. The summons stated: "If you fail to appear for the hearing on the date and at the time and place specified above, the case will proceed in your absence. If any of the charges against you are held for court, a request for a bench warrant against you will be transmitted to the Court of Common Pleas." (CP Dkt. No. 1 at 4).

Petitioner's brother signed the certified mail receipt. According to Petitioner, on the date the summons had been delivered to his home, he was incarcerated in Ohio on an unrelated matter. The preliminary hearing was held on June 12, 2008, in Petitioner's absence. Petitioner explains that he could not attend because he was incarcerated in Ohio. The case was held over for trial and when Petitioner failed to appear at his subsequent arraignment, a bench warrant for his arrest was issued. Authorities subsequently transferred him to Erie County and he applied for the appointment of a public defender. The court appointed John H. Moore, Esquire, to represent him.

Petitioner filed several pre-trial *pro se* motions with the court, including a motion to suppress evidence, motion for a photo line-up, and a motion for habeas corpus relief. The court would not consider any of these motions because Petitioner was represented by Attorney Moore. When asked by the court why he did not file those motions on Petitioner's behalf, Attorney Moore explained that he did not do so because he believed they had no merit and it would not have been in Petitioner's best interest to file them and further delay his trial. (Trial Tr. at 17-22).

Petitioner's jury trial was held on June 16, 2009. Prior to the selection of the jury, Petitioner informed the court that he was dissatisfied with Attorney Moore's representation because he refused to litigate the pre-trial motions that Petitioner had submitted *pro se*. Petitioner asked that new counsel be appointed, but the court refused his request because it held there was no legitimate reason to replace Attorney Moore. After advising Petitioner that he had a right to appointed counsel, but not counsel of his choice, the court informed Petitioner that he could either proceed with Attorney Moore as his counsel or represent himself at the trial. After a colloquy given in accordance with Rule 121 of the Pennsylvania Rules of Criminal Procedure, Petitioner chose to waive his right to counsel and to proceed

*pro se.* In accordance with Petitioner's request, the court appointed Attorney Moore as stand-by counsel.[2] (Trial Tr. at 24-32).

The Commonwealth called three witnesses: Ms. Miller, Ms. Balkovic, and Trooper Brown. They testified to the facts as set forth above. By the time of the trial, more than one year had passed since the accident had occurred and Ms. Balkovic admitted that she could no longer identify the driver of the truck that hit Ms. Miller's car. However, both she and Trooper Brown testified that a day or so after the incident she had no problem identifying Petitioner's as the driver of the truck involved. (Id. at 76-78, 84-86).

Petitioner testified in his own defense and stated that he was not the person driving the truck that hit Ms. Miller's car. He also stated that he could not "say for sure who was driving it." (Id. at 93). On cross-examination, Petitioner admitted that when he was first interviewed by Trooper Brown about the accident, he did not indicate that another individual had been driving his truck. (Id. at 95).

---

[2] Rule 121, Waiver of Counsel, provides:

**(A) Generally.**

(1) The defendant may waive the right to be represented by counsel.
(2) To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the judge or issuing authority, at a minimum, shall elicit the following information from the defendant:
    (a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;
    (b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;
    (c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;
    (d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;
    (e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and
    (f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.
    - - -
**(D) Standby Counsel.** When the defendant's waiver of counsel is accepted, standby counsel may be appointed for the defendant. Standby counsel shall attend the proceedings and shall be available to the defendant for consultation and advice.

The jury did not credit Petitioner's defense and found him guilty of the offense of Accident Involving Damages to an Attended Vehicle. The court found him guilty of the additional two summary offenses. It sentenced him to a term of imprisonment of 6-12 months for the charge of Accident Involving Damages to an Attended Vehicle, and a consecutive sentence of 60 days of incarceration on the charge of Driving With a Suspended License.[3]

Petitioner filed a direct appeal with the Superior Court of Pennsylvania, in which he claimed, in relevant part:

1. "Did the trial court err in failing to dismiss the charges, in that the Commonwealth was not required to show a *prima* facie case prior to trial?"

2. Did the trial court err in failing to dismiss the charges, in that the Commonwealth unconstitutionally excluded [him] from all pre-trial proceedings?"

3. "Did the trial court err in failing to appoint new counsel, thereby compelling self-representation; thus, denying [him] the constitutional right to assistance of counsel?"

(CP Dkt. No. 59, Commonwealth v. Miller, No. 1574 WDA 2009, slip op. at 5 (Pa.Super. Aug. 12, 2010) (citing Appellant's brief at 4)).

On August 12, 2010, the Superior Court issued a Memorandum in which it affirmed Petitioner's judgment of sentence. (Id. at 5-8). In the instant petition for a writ of habeas corpus, Petitioner raises the same three claims that he raised before the Superior Court. [See *Memorandum of Facts and Law In Support of Petition For Writ of Habeas Corpus*, ECF No. 2]. Respondents have filed their Answer [ECF No. 8], and the Common Pleas Court's file.

---

[3] Petitioner is presently on parole. Assuming he does not violate the terms of his parole, his sentence will expire on May 6, 2012.

5

## B. Discussion

### (1) Standard of Review

This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"). Under this statute, habeas relief is only available on the grounds that Petitioner's convictions were obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a). Errors of state law are not cognizable. See, e.g., Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'"), quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). See also Real v. Shannon, 600 F.3d 302, 309-10 (3d Cir. 2010).

In describing the role of federal habeas proceedings, the U.S. Supreme Court, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

Several years after the Court made this observation, Congress enacted AEDPA, which "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). It "requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations." Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004).

As codified at 28 U.S.C. § 2254(d), AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim

that was *adjudicated on the merits in State court proceedings* unless the adjudication of the claim–

> (1) resulted in a decision that was *contrary to,[4] or involved an unreasonable application of,[5] clearly established Federal law, as determined by the Supreme Court of the United States*; or

> (2) resulted in a decision that was based on an *unreasonable determination of the facts in light of the evidence presented in the State court proceeding.*

(Emphasis added).

Thus, AEDPA circumscribes a federal court's review of a state prisoner's federal constitutional claim when the state court has adjudicated that claim on the merits. Importantly, review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, — U.S. —, 131 S.Ct. 1388, 1398-1401 (2011). See also Brown v. Wenerowicz, 663 F.3d 619, 628-29 (3d Cir. 2011); Roundtree v. Balicki, 640 F.3d 530, 538 (3d Cir. 2011).

The U.S. Supreme Court recently stressed the "highly deferential" review that this Court must accord the state court's decision under § 2254(d):

> We have explained that "an unreasonable application of federal law is different from an incorrect application of federal law." Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id., at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." Id., at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than *de novo* review. Schriro v. Landrigan, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for

---

[4] "A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert, 387 F.3d at 234, quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

[5] "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Lambert, 387 F.3d at 234, quoting Williams, 529 U.S. at 407.

evaluating state-court rulings," <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

<u>Renico v. Lett</u>, — U.S. — , 130 S.Ct. 1855, 1862 (2010).  The Supreme Court also has recently elaborated:

> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  <u>Cf.</u> <u>Felker v. Turpin</u>, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

<u>Harrington v. Richter</u>, — U.S. —, 131 S.Ct. 770, 786-87 (2011).  <u>See</u> <u>also</u> <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003) (it is not enough for a petitioner to show that the state court's adjudication of any of his claims was an "incorrect or erroneous" application of U.S. Supreme Court precedent); <u>Waddington v. Sarausad</u>, 555 U.S. 179, 190 (2009) (where it is the state court's application of governing federal law that is challenged, "the state court's decision must be shown to be not only erroneous, but objectively unreasonable.") (internal citations and quotations omitted).

### (2)     Petitioner's Challenges to His Preliminary Hearing

Petitioner contends that he is entitled to habeas relief because he believes the Commonwealth failed to establish a *prima facie* case at his preliminary hearing.  This contention provides no basis for relief because claims concerning the lack of a *prima facie* case presented at a preliminary hearing are

rendered moot after a trial, wherein a criminal defendant is convicted of the crimes beyond a reasonable doubt.[6] United States v. Mechanik, 475 U.S. 66, 70 (1986) ("the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt."); United States v. Tulk, 171 F.3d 596, 598 (8th Cir. 1999) ("any injury sustained in the charging process is cured by a subsequent finding of guilt beyond a reasonable doubt"); Smith v. Nish, No. 07-1279, 2008 WL 4616850, *13 (W.D. Pa. Oct. 16, 2008) (citing case for the proposition that, because a criminal defendant has no constitutional right to a preliminary hearing, Gerstein v. Pugh, 420 U.S. 103 (1975), the petitioner's claim that he should not have been bound over for trial because probable cause had not been established, raised only an issue of state law and could not form the basis for federal habeas corpus relief).

Petitioner also contends that he is entitled to habeas relief because the preliminary hearing was held without him. In rejecting this claim, the Superior Court held:

> [Petitioner] argues that he was prevented from challenging Ms. Balkovic's photo identification of him at the preliminary hearing, which would have demonstrated that the Commonwealth could not establish a prima facie case. As we have already held that any deficiency at the preliminary hearing is harmless following a jury trial, this issue must fail.

(CP Dkt. No. 59, Miller, No. 1574 WDA 2009, slip op. at 5-6).

The Superior Court was correct that, to the extent that Petitioner was prevented from challenging the Commonwealth's *prima facie* case at the preliminary hearing, any error was rendered moot following his jury trial for the reasons already noted. Petitioner also is contending, however, that he is entitled to habeas relief because his preliminary hearing was held *in absentia*. That claim is denied because, even if he had a constitutional right to be present at his preliminary hearing under the circumstances of this

---

[6] The Superior Court denied this claim for the same reason, holding: "It is well settled in Pennsylvania that once a defendant has gone to trial and has been found guilty of a crime, any alleged defect in the preliminary hearing is rendered immaterial." (CP Dkt. No. 59, Miller, No. 1574 WDA 2009, slip op. at 5 (internal quotations and citations omitted)).

9

case, he still would not be entitled to habeas relief because any error was harmless. Cf. Ditch v. Grace, 479 F.3d 249 (3d Cir. 2007) (the Pennsylvania preliminary hearing is a critical stage of a criminal prosecution and the petitioner was denied his constitutional right to counsel at preliminary hearing; however, he was not entitled to habeas relief because any error was harmless). To determine whether constitutional error in a habeas case was harmless, this Court must decide whether the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637(1993), quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946). See also Fry v. Pliler, 551 U.S. 112 (2007); Ditch, 479 F.3d at 254-57. The Third Circuit Court has instructed:

> In making the harmless error determination, "the crucial inquiry is the impact of the error on the minds of the jurors in the total setting." [Hassine v. Zimmerman, 160 F.3d 941, 955 (3d Cir. 1998)]. "While the nature of the evidence against [Petitioner] is important, we must also examine the phases of the trial affected by the error, and determine whether the error had a substantial influence on the verdict despite sufficient evidence to support the result apart from the error." Id. "In doing so, we must of necessity weigh the impact of evidence on the jury and cannot help but make a judgment as to how the jury would reasonably perceive [Petitioner's] version of the events with and without the … violation."

Ditch, 479 F.3d at 256. "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless." O'Neal v. McAninch, 513 U.S. 432, 436 (1995) (quotation marks omitted); Bond v. Beard, 539 F.3d 256, 276 (3d Cir. 2008).

The Court is not in grave doubt that what occurred at Petitioner's preliminary hearing had a "substantial and injurious effect or influence" on the jury's and the trial court's verdicts. He claims that if he could have tested Ms. Balkovic's identification at the preliminary hearing he could have prevented it from being introduced against him at the trial. The Court is not persuaded. Ms. Balkovic positively identified Petitioner a day or so after the accident had occurred. That she could not identify him at his trial, which was conducted over a year later, did not make her prior identification so unreliable as to be

inadmissible. Moreover, there was evidence in addition to Ms. Balkovic's identification that established Petitioner's guilt. The truck was registered in his name, and when he first was interviewed by Trooper Brown he did not deny that it was he who had crashed into Ms. Miller's car and then fled the scene. He also had motive to flee because his driver's license was suspended and there was evidence to indicate that the individual who had been driving the truck had been drinking alcohol.

Based upon all of the forgoing, Petitioner's claims challenging what occurred at his preliminary hearing should be denied.

### (3)    Assistance of Counsel at Trial

Petitioner contends that he was denied his Sixth Amendment right to the assistance of counsel at his trial when the court refused to appoint him new counsel.[7] In denying this claim, the Superior Court held:

> [O]ur Supreme Court has held:
>
>> While an accused is constitutionally guaranteed the right to the assistance of counsel that right gives to a defendant only the right to choose, *at his or her own cost*, any attorney desired. Where, as here, an accused is indigent, the right involves counsel, but not free counsel of choice.
>
> Commonwealth v. Abu-Jamal, 720 A.2d 79, 109 (Pa. 1998) (emphasis in original) (citation omitted). Accordingly, [Petitioner] was not entitled to free counsel of his own choosing. Moreover, the record establishes that [Petitioner] knowingly, intelligently, and voluntarily waived his right to counsel and opted to proceed *pro se*. The court conducted an on-the-record oral colloquy and [Petitioner] completed a written colloquy waiving his right to counsel. Hence, we find [Petitioner's] third contention meritless.

(CP Dkt. No. 59, Miller, No. 1574 WDA 2009, slip op. at 6-7)

---

[7]    Petitioner also argues that Attorney Moore provided him with ineffective assistance at trial because he failed to request certain jury instructions. Because petitioner waived his right to counsel and opted to proceed *pro se*, he cannot now complain that Attorney Moore was ineffective. Standby counsel's role in representing a defendant who insists on representing himself is limited: to "attend the proceedings and … be available to the defendant for consultation and advice." Pa.R.Crim.P. 121(D). If defendant fails to request assistance, he cannot "bootstrap from his own failure to raise [a] claim by blaming [standby] counsel for failing to remedy his own mistake." Commonwealth v. Bryant, 855 A.2d 726, 740 (Pa. 2004). To impose such an obligation on standby counsel would infringe upon the defendant's right of self-representation.

The Superior Court's decision satisfies review under AEDPA. Petitioner has not shown that it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). Nor has he shown that its decision was based on an "unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2).

Petitioner's complaint is that his right to counsel was violated because the trial court "forced" him to proceed *pro se* at his trial.[8] This assertion is not supported by the record. Rather, the record demonstrates that he voluntarily waived his right to counsel after having received the appropriate colloquy under Rule 121 of the Pennsylvania Rules of Criminal Procedure. As the Superior Court recognized, the right to counsel is explicitly safeguarded by the Sixth Amendment. It is clearly established federal law as determined by the U.S. Supreme Court that no defendant can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel. See Powell v. Alabama, 287 U.S. 45 (1932); see also Johnson v. Zerbst, 304 U.S. 458, 467-68 (1938). Although not expressly stated in the Sixth Amendment, a clearly established corollary to the right to counsel is the "right to dispense with a lawyer's help," Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942), and to represent oneself, McKaskle v. Wiggins, 465 U.S. 168, 174 (1984) (referring to "the long-standing recognition of a right of self-representation in federal and most state courts"), which is the choice that Petitioner made in this case.

Based upon all of the foregoing, this claim should be denied.

---

[8] This is not a case where the right to counsel was "forfeited" due to some act by the Petitioner. See Fischetti v. Johnson, 384 F.3d 140 (3d Cir. 2004); Wilkerson v. Klem, 412 F.3d 449 (3d Cir. 2005). Petitioner waived his right to counsel and voluntarily consented to proceed *pro se*. Fischetti, 384 F.3d at 150 ("forfeiture and voluntary waiver are conceptually separate.")

## C.    Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Applying that standard here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied.  Accordingly, a certificate of appealability should be denied.


## III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Failure to do so will waive the right to appeal.  Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: February 15, 2012

cc:    The Honorable Sean J. McLaughlin
United States District Judge